IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANCE L. CROSBY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-01749 |
| | § | |
| PHILIP HOLDINGS, LLC d/b/a | § | |
| PHILIP SERVICES CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant PSC Industrial Outsourcing, LP's ("Defendant") Motion for Partial Dismissal (Document No. 9), which seeks dismissal of Plaintiff Vance L. Crosby's ("Plaintiff") claims of race discrimination and retaliation under 42 U.S.C. § 1981 and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). In response to the motion, Plaintiff withdrew his race and retaliation claims under 42 U.S.C. § 1981.[1] Remaining for consideration, therefore, is whether Plaintiff exhausted his administrative remedies on his retaliation claim under Title VII. After carefully considering the motion, response, reply, and the applicable law, the Court concludes as follows.

---

[1] Document No. 10 at 1 n.1. Accordingly, Defendants' motion to dismiss will be granted with respect to those claims, which are DISMISSED.

I. Background

Defendant employed Plaintiff as a truck driver from October 2002 to August 2005. Plaintiff, a black man, alleges that throughout his employment he was harassed by co-workers, who frequently uttered racial slurs directed against him. He alleges that he complained to management but the harassment continued. Plaintiff further alleges that he was "assigned work equipment that was typically the oldest and/or in the least good repair." And finally, Plaintiff alleges that he was "terminated for alleged policy violations, for improper conduct and insubordination," despite his having received consistently good job performance ratings.[2]

Plaintiff filed a Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC") on September 19, 2005. He did so by using EEOC Form 5, which instructed the complainant to check "appropriate box(es)" to denote the basis of the alleged discrimination. Of the nine bases for which boxes were provided, Plaintiff checked only "Race." On September 27, 2007, the EEOC issued a determination, sustaining Plaintiff's allegations of race discrimination. Plaintiff received his Right-to-Sue letter on March 14, 2012.[3] Plaintiff now sues

---

[2] Document No. 1 at 3-4 (Orig. Pet.).

[3] Id. at 2-4.

2

Defendant not only for race discrimination but also for retaliation. Defendant moves to dismiss the retaliation claim, arguing that Plaintiff did not exhaust his administrative remedies on that claim.[4]

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Standing to sue is an "essential component[] of federal subject matter jurisdiction." McCall v. Dretke, 390 F.3d 358, 361 (5th Cir. 2004). "The party invoking federal jurisdiction bears the burden of establishing" its standing. Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1017 (1998). The question of subject matter jurisdiction is for the court to decide even if the question hinges on legal or factual determinations. See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

The Fifth Circuit distinguishes between "facial" and "factual" attacks to subject matter jurisdiction. Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981); see also Irwin v. Veterans Admin., 874 F.2d 1092, 1096 (5th Cir. 1989). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenging the court's jurisdiction based solely on the

---

[4] Document No. 9.

pleadings. *See* Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990); Paterson, 644 F.2d at 523. A factual attack, on the other hand, involves submission of evidence extrinsic to the complaint. Paterson, 644 F.2d at 523. In response to a factual attack, the "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." Paterson, 644 F.2d at 523; *see also* Irwin v. Veterans Admin., 874 F.2d 1092, 1096 (5th Cir. 1989). In sum, a court evaluating a motion to dismiss pursuant to Rule 12(b)(1) may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002).

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. See Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.[5]

---

[5] It is unclear whether exhaustion of administrative remedies falls under 12(b)(1) or 12(b)(6). See Pacheco v. Mineta, 448 F.3d 783, 788 n.7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."). Because the documents attached to the parties' briefs all appear to be part of the Title VII administrative record, which is a public record, even if this issue properly falls under a 12(b)(6) analysis, they may be considered without converting this motion into one for summary judgment. See Green v. Small, No. Civ. A. 05-1055(ESH), 2006 WL 148740, at *6 n.4 (D.D.C. Jan. 19, 2006) (finding in Title VII case that the documents in administrative proceedings underlying the case were matters of public record and could be considered in a 12(b)(6) motion without

5

### III. Discussion

Before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC. Pacheco, 448 F.3d at 788; Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). "The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers." Pacheco, 488 F.3d at 788. "On the one hand, because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of the EEOC complaint should be construed liberally." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970); Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983)). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." Id. at 788-89 (citing Sanchez, 431 F.2d at 466). Accordingly, the Fifth Circuit "interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the

---

converting it into a motion for summary judgment); Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996) (stating that courts may consider matters of which it can take judicial notice on a 12(b)(6) motion and deciding that in securities fraud case this includes public disclosure documents filed with the SEC).

administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" Id. at 789. In this regard, courts must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Id. (citations omitted).

Plaintiff does not dispute that he was required to exhaust his administrative remedies on his retaliation claim, which is based on alleged actions occurring prior to filing his Charge. In his Charge, Plaintiff checked only the box for discrimination based on race, and not the box for retaliation.[6] This failure is not "a fatal error," however. Sanchez, 431 F.2d at 463. "[T]he crucial element of a charge of discrimination is the factual statement contained therein." Id. at 462. Likewise, his factual statement described several recurring incidents of racial hostility and discrimination against him, but never mentioned or spoke of retaliation. Plaintiff's Charge provides the following narrative:

> I. Effective August 8, 2005, my employment as a Liquid Tanker Driver was terminated. Throughout my employment I was harassed by co-workers and intimidated with job loss by the supervisors. The equipment assigned to me was always the oldest and/or in the least good

---

[6] Document No. 9, ex. 2.

repair. The manner in which I was addressed included racial slurs and innuendoes of a race-tainted bias. The n-word was used with impunity and management did nothing to discourage its repeated use in my presence.

II. Rick Griffin, Operations Manager, discharged me for disorderly conduct, but he failed to discipline non-Black employees in the same manner. Reports to supervisors about the racial bias were left unaddressed. Promises of new and better equipment, including trucks, were never delivered.

III. I believe that I was subjected to discriminatory actions because of my race, Black, in violation of title VII of the Civil Rights Act of [1964], as amended.[7]

Plaintiff's complaint before this Court does not allege any specific act of retaliation.[8] In response to the present motion, however, Plaintiff argues that in the two sentences of Paragraph II of the Charge alleging discriminatory discharge based on race and his reports to supervisors of racial bias that were left unaddressed, "Plaintiff is clearly making a complaint of retaliation including but not limited to termination and further harassment."[9] Plaintiff also cites to the EEOC's Letter of Determination, and a memorandum and notes from EEOC investigators, arguing that "[i]t is clear therefrom that Plaintiff made a

---

[7] Document No. 9, ex. 2.

[8] Document No. 1 at 5. Plaintiff's Original Complaint alleges: "Defendant illegally retaliated against Plaintiff because he complained of maltreatment. Defendant had no legitimate business reasons for any of such acts. Each act of retaliation is in violation of the applicable anti-retaliation provision." Id.

[9] Document No. 10 at 4.

8

complaint of retaliation including but not limited to ridicule and further harassment."[10]

The latter conclusions are not supported by a plain reading of the Charge and the exhibited records of the EEOC investigation. Plaintiff alleges that he complained to management of discrimination, but his Charge is not that he was retaliated against for engaging in that protected activity but rather that management did *nothing* in response to his complaints about racial bias. Moreover, none of the EEOC documents relied on by Plaintiff mentioned or discussed retaliation--a violation well known to EEOC investigators--even though the EEOC fully *sustained* Plaintiff's allegations that he was a victim of race discrimination. The "applicable standard is not [the] scope of [the] actual investigation, but what we reasonably would expect the EEOC to investigate." Clark v. Kraft Foods, Inc., 18 F.3d 1278, 1281 n.9 (5th Cir. 1994) (citing Young v. City of Houston, 906 F.2d 177, 179-80 (5th Cir. 1990)). Nevertheless, the "investigation of a particular claim creates a strong inference that such a claim was presented." Id. at 1280. Here, on the other hand, where after an actual investigation the EEOC found numerous incidents of race discrimination but, when the investigation ended, made no reference to or finding that there was or was not retaliation, it is

---

[10] Document No. 10 at 5, exs. B, D, E.

reasonable to infer that the EEOC did not believe that Plaintiff had complained of retaliation and that Plaintiff's factual statement did not reasonably require it to conduct an EEOC investigation of retaliation. In sum, Plaintiff did not file in the EEOC either an express or implied charge of retaliation. *See* Burlington N. and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2416 (2006) ("the [retaliation] standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint"). Plaintiff therefore did not exhaust his administrative remedies for a retaliation claim. *See, e.g.,* Blanchet v. Chevron/Texaco Corp., 368 F. Supp. 2d 589, 593 (E.D. Tex. 2004) (statement in her charge that she complained to members of the management did not exhaust administrative remedy on retaliation claim when no allegation made that she was retaliated against based on this report); Perez v. MCI World Com Commc'ns, 154 F. Supp. 2d 932, 936, 938 (N.D. Tex. 2001) (statement that plaintiff was discharged did not exhaust administrative remedy on retaliation claim when the only facts alleged concerned confrontation with co-worker ex-boyfriend). Accordingly, it is

ORDERED that Defendant PSC Industrial Outsourcing, LP's Motion for Partial Dismissal (Document No. 9) is GRANTED as to Plaintiff's

Title VII retaliation claim and this claim is DISMISSED with prejudice.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 7TH day of November, 2012.

                                    EWING WERLEIN, JR.
                              UNITED STATES DISTRICT JUDGE